Case: 4:22-cv-00299-JAS Document 37 Filed 12/21/23 Page 9 of 14

Lamall Monroe #58925-066
Name and Prisoner/Booking Number

United States Penitentiary Tucson
Place of Confinement

Post Office Box# 24550
Mailing Address

Tucson, Arizona 85734
City, State, Zip Code

FILED / LODGED / RECEIVED / COPY
FEB 15 2024
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ____ DEPUTY

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Lamall Monroe #58925-066,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) United States of America,
(Full Name of Defendant)

(2) Duffy Campbell,

(3) Miguel Vasquez,

(4) Nurse Stone,

Defendant(s).

☒ Check if there are additional Defendants and attach page 1-A listing them.
(Listed on Page 7)

**CASE NO.** 4:22-cv-00299-JAS
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT**
**BY A PRISONER**
JURY TRIAL DEMANDED

☐ Original Complaint
☒ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ☒ Other: Federal Tort Claims Act, 28 U.S.C. §2671-80.

2. Institution/city where violation occurred: United States Penitentiary Tucson(U.S.P. Tucson)

Case: 4:22-cv-00299-JAS Document 37 Filed 12/21/23 Page 10 of 14

## B. DEFENDANTS

1. Name of first Defendant: United States of America. The first Defendant is employed as: Federal Tort Claims Act (FTCA) Defendant (Position and Title) at United States Penitentiary Tucson (Institution).

2. Name of second Defendant: Duffy Campbell. The second Defendant is employed as: as: Former SHU Lieutenant (Position and Title) at United States Penitentiary Tucson (Institution).

3. Name of third Defendant: Miguel Vasquez. The third Defendant is employed as: Correctional Officer (Position and Title) at United States Penitentiary Tucson (Institution).

4. Name of fourth Defendant: Nurse Stone. The fourth Defendant is employed as: Former U.S.P. Tucson Medical Staff Member (Position and Title) at United States Penitentiary Tucson (Institution).

(Continued on Page 7.)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner? ☐ Yes ☐ No

2. If yes, how many lawsuits have you filed? 1. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: Monroe v. Blancksee
      2. Court and case number: CV 20-00538-TUC-JAS.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) Dismissed without Prejudice.

   b. Second prior lawsuit:
      1. Parties: ______ v. ______
      2. Court and case number: ______.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) ______.

   c. Third prior lawsuit:
      1. Parties: ______ v. ______
      2. Court and case number: ______.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) ______.

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: Violation of Federal Tort Claims Act (Assault, Battery, Negligence and IIED). Filed:6/18/2021 Denied:1/11/2022.

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.

☐ Basic necessities ☐ Mail ☐ Access to the court ☐ Medical care
☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
☒ Excessive force by an officer ☐ Threat to safety ☒ Other: Failure to Protect.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

At all times relevant to this complaint Defendants Campbell, Stone, Vasquez, McWhorter and Howard were employed by the United States at U.S.P. Tucson. This lawsuit concerns the manner in which these individuals operated the U.S.P. Tucson segregation Housing Unit (SHU) and abuse occuring in the SHU in the use of a restraint chair as toture. In the Bureau of Prison (BOP), use of force are governed by Program Statement 5566.06 which concern who may use force, how force may be used, and what occurs after a use of force. Defendant BOP has known for several years at U.S.P. Tucson of chronic and excessive uses of force and other unconstitutional conditions due to repeated Tort Claims, lawsuits and administrative remedies requested or appeals describing such. As recent as nearly a month after the Plaintiff's SHU injuries, the restraint chair had been used by the SHU staff at U.S.P. Tucson in February of 2021, to restrain inmate Tayvon Barber who lost both his hands to amputation due to also being tortured. Following every use of force, staff employed by the BOP such as the Defendant McWhorter and Howard has to perform an "After-Action Review" which entails watching video footage and reviewing all documentation related to a use of force. All use of force at U.S.P. Tucson are required for such review to determine if the use was proper as well as any recommendations for the future. No later than the amputation of inmate Barbers hands was it even possible for BOP, McWhorter and Howard to know the restraint chair was being used to torture inmates in the SHU. Such reviews were documented and sent to the BOP regional and Central offices. McWhorter and Campbell had also been accused in adminstrative remedies of lying and falsifying documentation to cover up unconstitutional conditions or uses of force at U.S.P. Tucson but it is not clear BOP did anything in response(continued on pg. 8)

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
Permanent nerve and tissue damage, loss of dexterity, pain and suffering, PTSD, mental and emotional trauma.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count I? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count I to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. ______.

## COUNT II

1. State the constitutional or other federal civil right that was violated: Violation of the Eighth Amendment for Cruel and Unusual Punishment.

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.

☐ Basic necessities ☐ Mail ☐ Access to the court ☐ Medical care
☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
☐ Excessive force by an officer ☐ Threat to safety ☒ Other: Dileberate Indifference.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

(Same as Count One), On January 10, 2021, Defendant Duffy Campbell was alerted by Defendant Vasquez that the Plaintiff was in possession of contraband. (Exhibit A, pg. 4, ¶3.). Campbell came out of his office screaming "You want to bring shit into my SHU?" (First Amended Complaint (FAC) pg. 8). Campbell ordered Officer Vasquez, and two other officers to bring the Plaintiff into a holding cell (outside of the view of video cameras) and ordered that the Plaintiffs clothes be cut off of him and at that point Campbell yelled "FLOOR!" and Defendant Vasquez and officer Hildreth grabbed the Plaintiff by the head and neck then slammed Plaintiff face first into the floor causing him momentary loss of consciousness. Campbell stood by and watched officers sit atop the Plaintiff in a headlock and were suffocating him [Plaintiff] and Campbell said "that's enough." and ordered for the restraint chair to be brought in. (FAC pg. 8, and Ex. A, pg. 4, ¶4.). Campbell then supervised the officers tighten the hand restraints to their tightest settings cutting down circulation to the Plaintiffs hands, then did the same with leg shackles to his ankles. They then lowered Plaintiff into the chair applying straps to Plaintiff's legs, shoulders and forearms. Plaintiff was totally immobile and in tremendous pain. (FAC pg. 8, and Ex A, pg. 4, ¶5.). Campbell summons Defendant Nurse Stone, taking her aside he say's "Don't you help him one bit, you hear me?" until she nodded. Campbell then tell's Plaintiff he'd be killed if he says anything stupid, then brought and activated a hand-held camera to film Defendant Stones injury and restraint check of Plaintiff on behalf of medical. (FAC pg. 8, and Ex. A, pg. 4, ¶6.). Afterward, Campbell told Plaintiff he was [sic] gonna cry and beg, "piss and shit" on himself before it was all over with. (FAC pg. 8). The Plaintiff has suffered permanent muscle and nerve damage and was taken to the community hospital on (3) occasions for persistent and severe swelling, and pain. (Ex. A, pg. 5, ¶9.). This damage at the command of Campbell has been verified through "Tucson Medical Center, a Neurologist and Plaintiff had to participate in physical therapy. U.S.P. Tucson has also failed to do any follow-up's.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

(Same as Count One),

5. **Administrative Remedies.**

a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No

b. Did you submit a request for administrative relief on Count II? ☒ Yes ☐ No

c. Did you appeal your request for relief on Count II to the highest level? ☒ Yes ☐ No

d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. ______

## COUNT III

1. State the constitutional or other federal civil right that was violated: Violation of the Eighth Amendment for Inadequate medical treatment and Negligence.

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
☐ Basic necessities ☐ Mail ☐ Access to the court ☐ Medical care
☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
☐ Excessive force by an officer ☐ Threat to safety ☒ Other: Dileberate Indifference.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.
(Same as Count One), On January 10, 2021, Defendant Nurse Stone was called to the segregation housing Unit (SHU) to conduct an injury and restraint check on the Plaintiff while he was in the restraint chair. Upon entering the holding cell where Plaintiff was restrained Defendant Duffy Campbell took Nurse Stone aside and orders her saying "Don't you help him one bit, you hear me?" and Nurse Stone nodded in agreement. (FAC pg. 8, and Ex. A, pg. 4 and 5, ¶ 6). On at least two occasions throughout the time the Plaintiff was in restraints, strapped to the restraint chair, Health Services staff, Registered Nurse, Stone, examined the Plaintiff and witnessed that the wrist restraints were so tight that they were embedded into the Plaintiff's skin. The Plaintiff complained to Nurse Stone that he was in extreme pain, and that he could not move his hand any longer. Nurse Stone ignored the Plaintiff's complaints, and after squeezing the tips of the Plaintiff's finger, she exclaimed, "See, it's turning pink, so there is blood circulation." (Ex. A, pg. 4 and 5, ¶ 6). Nurse Stone also falsified the Plaintiff's medical record making no mention of the Plaintiff's physical distress or the fact that the straps were too tight. (Ex. A, pg. 5, ¶ 7) Nurse Stone, rather than performing her professional duties, she allowed herself to be negatively influenced by Correctional Staff, Defendant Duffy Campbell. (Ex. A, pg. 5, ¶ 8). The Plaintiff has remained in severe physical pain since the restraint incident, and was deprived of pain medications that was recommended by outside medical consultants. (Ex. A, pg. 5, ¶ 10). Nurse Stone could have had the Plaintiff removed from the restraint chair or at least had them loosened enough to prevent the damages that Plaintiff now has.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
(Same as Count One)

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count III? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count III to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. ______

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

## E. REQUEST FOR RELIEF

State the relief you are seeking:

1. Damages in the amount of $500,000.00 against the United States.
2. Damages in the amount of $1,000,000.00 per individual staff Defendant.
3. Award Plaintiff cost and fees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 1-22-24
DATE

Lamall Monroe
SIGNATURE OF PLAINTIFF

Jailhouse Lawyer L.D.G.
(Name and title of paralegal, legal assistant, or other person who helped prepare this complaint)

(Signature of attorney, if any)

(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

(5)Darren McWhorter

(6)Catricia Howard

(7)Federal Bureau of Prisons

PAGE 1-A: ADDITIONAL DEFENDANTS

B. Defendants (Continued)

(5) Defendant Darren McWhorter was employed as a warden at U.S.P. Tucson.

(6) Defendant Catricia Howard was employed as a warden at U.S.P. Tucson.

(7) The Federal Bureau of Prisons is a U.S. Government agency that operates U.S.P. Tucson.

PAGE 7: SECTION B, ADDITIONAL DEFENDANTS

Thus, on January 10, 2021, when Lamall Monroe (Plaintiff) was caught in possession of a radio, batteries, and coffee he was facing an ordeal much more serious than the minor disciplinary infraction called for. After Vasquez informed Campbell of the items, Campbell came out of his office screaming "You want to bring shit into my SHU?" and ordered Vasquez and two other officers to take Plaintiff into an off-camera holding tank while a third officer stood by the door to watch. At this point Campbell ordered Vasquez and the other officers to cut off Plaintiff's clothing. Once in the holding cell Vasquez began to wrap a chain around Plaintiff's chest so tight that the Plaintiff could not breathe and began to fear for his life. The Plaintiff begged not to be placed into the chains. At this point Campbell yelled "FLOOR!" and Defendant Vasquez and Hildreth (whose combined weight is nearly 500 lbs) grabbed Plaintiff by the head and neck and slammed Plaintiff face first into the floor causing him momentary loss of consciousness. Upon coming to, Plaintiff realized he was bleeding now. They sat atop the Plaintiff in a headlock and were suffocating him Plaintiff and Campbell said "That's enough" and ordered for the restraint chair to be brought in. Then, the staff tightened the hand restraints to their tightest setting cutting down circulation to the Plaintiff's hands, then did the same with leg shackles to his ankles. The then lowered Plaintiff into the chair applying straps to Plaintiff's legs, shoulders and forearms. Plaintiff was totally immobile and in tremendous pain. Campbell summoned nurse Stone, took her aside saying "dont you help him one bit, you hear me?" until she nodded. He then told Plaintiff he'd be killed if he said anything stupid, then brought and activated a hand-held camera to film Stone's injury and restraint check of Plaintiff on behalf of medical. Afterward, Campbell told Plaintiff he was [sic] gonna cry and beg, "piss and shit" on himself before it was all over with. In the U.S.P. Tucson SHU dozens of inmates have witnessed screams and cries for help echoing all night long, the sounds of other victims of the restraint chair and Duffy Campbell's "Shock Crew". A similar situation existed at another prison Campbell was employed as. In the case of United States v. LaVellee, 439 F.3d 670(10th Cir. 2006) staff at the Florence Federal Correctional Complex known as the "The Cowboys" ran a crew of torturer's who were engaging in "wide-spread abuse of preisoners and falsification of records to cover up that abuse" at U.S.P. Florence. As a result of the abuse, eight Bureau of Prisons correctional officers were indicted and two were charged by information. These staff engaged in conspiracy to (1) unjustifiable strike, kick, assault, injure, and physically punish inmates;(2) falsely justify uses of force against inmates by falsifying records and fabricating injuries;(3) threaten staff to secure their silence; and (4) perpetrate an envioremient within the prison allowing unlawful beatings and assualts against inmates to continue indefinitely and with

impunity. Previous cases alleging abuse, and falsification of BOP records used before this Court include United States v. Mixon, No. CR-14-00613-JGZ and Garrett v. Diaz, No. CV-12-0890-JGZ. See also United States v. Hill, No. 21-CR-00143 (N.D. Ga. 2022) (Here Victor Hill Sheriff of Georgia's Clayton County faced a jury trial on seven federal charges of violating the civil rights of jail detainees held in a restraint chair as punishment). Like Plaintiff here, the indictment in that case alleges placement in a restraint chair while being "unarmed, not under the influence of drugs, and offering no resistance." The Cowboys of U.S.P. Tucson have progressively been issued more weapons, more forms of restraint, and less oversight of what they do with them in the SHU at U.S.P. Tucson.

On the night of January 10, 2021, there was no one to hear Plaintiff's screams when nurse Stone exited the cell and Vasquez reentered to pick up a long seatbelt-like strap attached to the restraint chair, put his foot on the chair, and began to pull the strap with all his might tightening the other straps even further. Plaintiff felt crushed and in severe pain. Plaintiff's extremeties began to shake and swell, Stone, Campbell, Vasquez and Hildreth refused to loosen the restraints for over 12 hours. Plaintiff developed open wounds on his wrists and continued to bear the permanent scars from the straps. Eventually Plaintiff required hospitalization 3 times stemming from the injuries from the restraint chair that night.

At the Tucson Medical Center Emergency room, a doctor requested but was refused an opportunity to take photogrtiphs of the Plaintiff's injuries. Plaintiff was denied nerve pain medication for his nerve damage, other injuries to the Plaintiff's wrists and hands are permanently disabled. Campbell and Vasquez orchestrated authoring false disciplinary charges but the Plaintiff was acquitted by an independant hearing officer, who refused to help cover up the brutal abuses of that night. On March 15, 2021, Plaintiff promptly filed an informal resolution (BP-8) with the unit manager regarding his torture and assault in the SHU by staff reflecting the Defendants January 10, 2021, conduct. (Remedy ID#1072815-F1). On April 7, 2021, the investigation was closed and the Plaintiff filed an Administrative Remedy (BP-9) with the Western Regional Office regarding his torture and the assault by the Defendants, May 18, 2021. (BP-9 Remedy ID#1072815-R1), Rejected the same day.

On June 18, 2021, Plaintiff filed a Federal Tort Claim (Administrative Claim #TRT-WXR-2021-06195) to the Western Regional Office regarding the January 10, 2021, Torture and Assault by staff in the SHU. On July 12, 2021, Plaintiff filed an appeal to his BP-9 with a (BP-10) with the Western Regional Office (Remedy ID#1072815-R2) which was denied on September 29, 2021. Pursuing his last remedy the Plaintiff appealed the denial of his BP-10 after coming off of a lockdown at U.S.P. Tucson which lasted two and a half months (75+ days). The Plaintiff filed a BP-11 on January 5, 2022, to the Central Office (Remedy ID#1072815-A1) to the General Counsel. On January 11, 2022, the Plaintiff's Federal Tort Claim was denied and was given six months to bring his claim in a Federal District court. On March 9. 2022, the Plaintiff's BP-11 was denied completing his Administrative Remedy Procedures. (Exhibits A, 1 – 7) The Plaintiff filed the instant action of his claim in this Court on July 8, 2022, timely a during the duration of the proceedings of his claim he has suffered access to the courts through the mailrooms delay of his mail and institution lockdowns. (Exhibits B, 1 – 8).

Since the filing of Plaintiff's initial grievances and Administrative Appeal, the United States Attorney's Office in Tucson however has no plans known to Plaintiff to even investigate the abuses occuring at U.S.P. Tucson within it's own jurisdiction. Thus, the Bureau of Prisons has failed it's duties to protect the Plaintiff from such actions from it's staff members employed at the United States Penitentiary Tucson.

D. Cause of Action Continued

COUNT IV

1. Violation of the Eighth Amendment for Cruel and Unusual Punishment

2. Excessive force by an officer and Dileberate Indifference.

3. (Same as Count One), On January 10, 2021, Defendant Miguel Vasquez engaged the Plaintiff. During a pat down search upon his [Plaintiff] arrival in the special housing unit, (SHU) by Defendant Vasquez it was discovered that the Plaintiff was in possession of Contraband. (Ex. A, pg. 4, ℙ2). Vasquez alerted Defendant Duffy Campbell Plaintiff was in possession of contraband (Ex. A, pg. 4, ℙ3). Campbell ordered Vasquez and two other officers, to bring the Plaintiff into a holding cell (outside the view of video cameras), and ordered that Plaintiff's clothes be cut off of him. (Ex. A, pg. 4, ℙ4). Once in the holding cell Vasquez began to wrap a chain around Plaintiff's chest so tight that the Plaintiff could not breath and began to fear for his life. At this point Campbell yelled "FLOOR!" and Defendant Vasquez and Hildreth grabbed Plaintiff by the head and neck then slammed Plaintiff face first into the floor causing him momentary loss of consciousness. They sat atop the Plaintiff in a headlock and were suffocating him [Plaintiff] and Campbell said "That's enough" and ordered for the restraint chair to be brought in. (FAC pg. 8 and Ex. A, pg. 4, ℙ4). Then the staff tightened the hand restraints to their tightest settings cutting down circulation to the Plaintiff's hands, then did the same with leg shackles to his ankles. They then lowered Plaintiff into the chair applying straps to Plaintiff's legs, shoulders and forearms. Plaintiff was totally immobile and in tremendous pain. (FAC pg. 8 and Ex. A, pg. 4, ℙ5). Defendant Vasquez, wrote two incident reports, both written fifteen (15) minutes apart. (Ex. A, pg. 5, ℙ11). The Plaintiff alleges that Defendant Vasquez wrote a fictitious report in order to justify the Plaintiff being placed in the four point ambulatory restraints in a restraint chair. One of the reports described the Plaintiff as being in possession of contraband, and describes no physical struggle at all. The other report describes the Plaintiff becoming aggressive, and struggling with correctional staff. The Plaintiff was only found guilty of the incident report describing him in possession of the contraband. The other report was expunged from the Plaintiff's record. (Ex. A, pg. 5 and 6, ℙ12). The Plaintiff alleges that he was placed in restraints for the purposes of punishment, and in the process he was physically tortured for approximately twelve (12) hours. [by Defendant Vasquez at the command and supervision of Defendant Campbell]. That as a result, the Plaintiff continues to suffer in extreme physical pain on a daily basis, and that he has been diagnosed with permanent muscle and nerve damage. (Ex. A, pg. 6, ℙ13.)